172

**DUNCAN v. PIPER et al.**

**No. 11557.**

Court of Civil Appeals of Texas. Dallas.

Jan. 26, 1935.

J. H. Synott, of Dallas, for appellant.

Jack C. Burroughs, of Dallas, for appellees.

JONES, Chief Justice.

■ This suit was instituted in a district court of Dallas county by appellant, J. M. Duncan, against appellees, E. M. Piper, Dick Piper, and C. S. Williamson, individually and as partners, doing business under the firm name of E. M. Piper Auto Company, to recover damages for the conversion of an automobile, and for actual and exemplary damages because of alleged malicious prosecution and false imprisonment. From a judgment of dismissal, after the court had sustained a general demurrer to appellant's petition and his refusal to amend, this appeal has been duly perfected. Under such an appeal, the material facts alleged in the petition must be taken as true and constitute the statement of facts. Stated as briefly as possible, the material facts are as follows: Appellant purchased an automobile from appellees, making a cash payment of $50 and executing a note for the remainder, payable in installments of $8 per week, secured by a mortgage lien on the automobile. Appellant was never in default in the payment of these weekly installments. When less than 50 per cent. of the purchase price of the car had been paid, appellant was arrested, charged with violation of the National Prohibition Law (27 USCA § 1 et seq.), and the car seized by the federal authorities, under the provisions of section 40, title 27 of the United States Code Annotated. Such section provides that, "whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and, team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this chapter in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale,

shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the Treasury of the United States as miscellaneous receipts. All liens against property sold under the provisions of this section shall be transferred from the property to the proceeds of the sale of the property. * * * "

Appellant was released from custody on bail, and he and appellees entered into an agreement, under which appellant was to continue the weekly payments to appellees, and appellees were to intervene before the federal court and set up their claim as holder of a bona fide lien against the car; that if appellees should establish their claim and the car be turned over to them, they would apply the amount of weekly payments that had thus been made to appellees as a credit on his original contract, and deliver the car to appellant, under the original contract; but if appellees were unsuccessful in their efforts to have the car turned over to them, as bona fide lienholder, they would return to appellant the payments made after the date of the seizure of the car.

Appellees were successful in their plea in intervention and the car was delivered to them, and they in turn delivered it to appellant, under the agreement to carry out the original contract for the purchase of the car. Presumably, the car was relinquished by the United States authorities, on the theory that appellees' claim of bona fide lienholder was good, and that, after the discharge of their lien, there would remain no equity in favor of the United States. Appellant was convicted of the offense of violating the National Prohibition Law and given a fine and jail sentence, which judgment was satisfied by appellant.

While appellant was serving his jail sentence, and after appellees had received possession of the car, through an order of the federal court, and delivered it to appellant under the said agreement, and while it was in the possession of appellant's wife, it is alleged, appellees formed a conspiracy to defeat appellant's claim to the car, to take possession of the car for their own use and benefit, without regard to their agreement with appellant, and without regard to his ownership of the car, and become themselves its owner, without paying any consideration to appellant therefor; that in pursuance of such alleged conspiracy, and in order to get possession of the car, they falsely represented to appellant's wife that they would have to have possession of the car for a few days in order to have the same finally turned over to them, under their claim as bona fide lienholder, though the car had already been delivered to them on such ground. Relying upon the truthfulness of this statement, appellant's wife delivered back the car to appellees for such purpose. When appellees secured possession, they refused to recognize the agreement, or appellant as owner of the car, and declined to accept the subsequent weekly payments tendered by appellant. Appellant, however, did secure possession of the car again, by taking it from one of appellees' drivers. Appellees had demanded the refinancing of the car under a new agreement before they could deliver it to appellant. Appellant represented to appellees that he had a deal with a finance company for refinancing the car, but that such company would have to see the car before the refinancing could be consummated, whereupon appellees sent one of their employees, by the name of Hall, in the car with appellant to the place of business of the finance company. Appellant's wife was at this place of business in another car, and appellant required Hall to get out of the car and into the car that appellant's wife was driving, and appellant's wife took possession of the automobile in question, while appellant drove Hall back to appellees' place of business, in the car his wife had used. Appellant took and held possession of such car, under his contract of purchase and his later agreement with appellees.

Appellant was unable to secure employment in Dallas; he and his wife had relatives in Houston, whom they frequently visited, and for the purpose of visiting such relatives, and also for the purpose of securing employment, appellant and his wife drove the car to the city of Houston, and while there he attempted to secure employment. While he was on such visit and mission, appellees filed, or caused to be filed, in a justice court of Dallas county, a charge of theft of property of the value of over $50 (a felony) against appellant, secured a warrant of arrest, and while appellant was in a place of business in Houston, negotiating for employment, he was arrested on said charge and brought to Dallas at night and placed in the county jail, where he remained for some days, until the

grand jury, at the instance of appellees, investigated the case, refused to return an indictment, and the prosecution was dismissed. Appellees took possession of the car in question, in the city of Houston, after appellant's arrest, and have appropriated same to their own use and benefit.

Appellees make the claim that the agreement entered into under which they were to intervene in the federal court on their claim as holders of a valid lien against the car, and, if such intervention were successful, to turn the car back to appellant under his contract of purchase, is an illegal agreement, in that, "it is an attempt to defraud the Federal Government, and, under the laws of this State, it is immaterial, whether or not one party fulfills his part of an illegal contract, and under no circumstances can a party to an illegal contract or agreement enforce his rights, or recover for damages as a result of the other party failing to comply with the illegal contract."

█ If appellees are correct in the assumption that appellant's rights in the premises depend upon, and arise from, an illegal contract, then at least so much of appellant's suit as seeks recovery for the value of the car, because of its conversion, must fail; for there is no question but that courts will not compel either party to perform his part of an illegal contract. The crucial question then is: Was the agreement under which appellant was given possession of the car, after appellees' successful plea of intervention, illegal?

█ We fail to find in the agreement, entered into between the parties, after the car had been seized by the federal authorities, any stipulation that can be construed as an attempt to defraud the federal government. What right was the government asserting to the car when it was seized? (a) To condemn the car, because of its illegal use in the violation of the National Prohibition Law; (b) to sell the car at public sale, and to pay the proceeds into the United States Treasury. However, section 40 above quoted gives to a bona fide lienholder a superior lien to the government to the proceeds of sale to satisfy the lien, and the amount of this lien must be first paid before any payment may be made into the Treasury. The statutes give to appellees the unquestioned right to intervene and establish their bona fide claim and establish the fact that they were innocent, in so far as having any connection with the crime charged against appellant is concerned.

It appears to be the policy of the government, if the superior lien of appellees is suffi-cient in amount to absorb what would ordinarily be the proceeds of the sale of the condemned car, then to decline to exercise the right of sale, but to deliver the car to the bona fide lienholder. This seems to have been the course pursued by the government in the instant case, and it refused to continue in possession of the car and subject it to the expenses of the sale, but delivered it to appellees, as innocent holders of a bona fide lien. The agreement, instead of attempting to defraud the United States, recognizes fully the government's rights in the premises, and the agreement begins only after the United States government has exercised its option not to sell the car, but to deliver it to appellees, because of their superior lien. No federal statute gives the government the right to dictate to the lienholder what lawful course it shall pursue in reference to the car, if and when it is delivered in satisfaction of the established lien. We have been cited to no authority prohibiting such action, and we can see no reason why appellees, if they desired to do so, could not have delivered the car to appellant under his old contract, to have their lien satisfied by its fulfillment, and this is what was done.

█ To sustain their contention in this respect, appellees cite a very correct rule, announced by 10 Tex. Jur., § 114, pp. 198, 199, and contend that this case comes under such rule. The rule is: "A contract made in consideration of an agreement not to prosecute a person for a crime actually committed by him, or of the dismissal of a pending prosecution, is contrary to public policy and forbidden by the statute, and is unenforceable. Nor is it necessary, in order to invalidate the transaction, that there shall have been an express agreement to stifle the prosecution; it is sufficient if such an agreement can be inferred from the circumstances."

The agreement pleaded by appellees in no way comprehends any of the matters therein mentioned. The agreement does not attempt to secure the dismissal of the prosecution, does not attempt to stifle the prosecution, or to thwart in any way the rights of the United States to forfeit the car, if the government should deem it advisable to do so.

█ In respect to appellant's count in his petition for damages, because of malicious prosecution and false imprisonment, appellees' claim is that, when appellant alleged that, at the time he repossessed the car, he required appellees' driver to get out of said car and turn it over to him, he thereby rendered himself liable for the charge of theft.

This claim is based on two erroneous theories: (1) That appellees were the rightful owners of the car and were legally holding its possession. We have seen that this is not true. (2) That appellant, having alleged that he required appellees' driver to surrender possession of the car, shows that such possession was secured unlawfully. We do not think so. The allegation does not show that any force was used, or breach of peace committed, but simply shows the rightful owner of the car legally repossessed himself of it when his possession had been wrongfully taken from him. This statement is made on the facts alleged in appellant's petition, which we must treat as the true facts on this appeal.

We are of the opinion that both counts in the petition alleged a cause of action, and that the court erred in sustaining the general demurrer. It necessarily follows that this case must be reversed and remanded for a trial on its merits.

Reversed and remanded.